**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ANGELINA VALLELUNGA,** *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>-against-<br><br>**PARAMOUNT ASSETS, LLC**, *a New Jersey limited liability company,*<br><br>Defendant. | Civil Case No.:<br><br>**CIVIL ACTION**<br><br>**CLASS ACTION COMPLAINT and JURY TRIAL DEMAND** |

Plaintiff Angelina Vallelunga ("Plaintiff"), by and through undersigned counsel, brings this class action against Defendant Paramount Assets, LLC, ("Defendant" or "Paramount") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action under the 47 U.S.C. § 227 *et seq*., the Telephone Consumer Protection Act ("TCPA"), arising from Defendant's

systematic, repeated, and unlawful violations of the TCPA and its implementing regulations.

2. Plaintiff brings this action pursuant to 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c), which prohibit telephone solicitations to residential and cellular telephone numbers listed on the National Do Not Call ("DNC") Registry.

3. Despite Plaintiff's telephone number being registered on the DNC, Defendant sent multiple unsolicited telemarketing text messages, including promotional offers, without Plaintiff's prior express invitation or permission.

4. Defendant also used an autodialer, or a system that functions as the equivalent of an ATDS, to send promotional messages to Plaintiff and the putative Class, without obtaining prior express written consent in violation of 47 U.S.C. § 227(b).

5. Defendant is a limited liability company engaged in the business of real estate investment, development, and property management, with its principal place of business in Newark, New Jersey.

6. On or about May 19, 2018, Plaintiff registered her cellular telephone number ending in 4159 with the National Do Not Call Registry.

7. Beginning in or around July 2025, Plaintiff received telemarketing text messages sent to her registered phone number from Defendant, despite having no

prior relationship with without providing any consent to receive such communications.

8. By failing to honor the National Do-Not-Call registry, Defendant has harmed hundreds, if not thousands, of consumers.

9. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has caused invasions of privacy, aggravation, and disruption to the daily lives of countless individuals. Plaintiff also seeks statutory damages on behalf of herself and Class Members, as defined below, and any other available legal or equitable remedies.

## PARTIES

10. Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of Orange, New Jersey, and the sole and primary subscriber and user of the cellular telephone number ***-***-4159 (the "4159 Number").

11. Defendant is, and at all times relevant hereto was, a limited liability company engaged in the business of real estate investment, development, and property management with its principal office in Newark, New Jersey.

## JURISDICTION, VENUE, AND STANDING

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute.

13. Defendant is subject to personal jurisdiction in New Jersey because it is a limited liability company duly organized under the laws of New Jersey and maintains its principal office in New Jersey, and is therefore at home in New Jersey.

14. Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the wrongful conduct giving rise to this lawsuit took place within this judicial District.

15. Plaintiff has standing to maintain this action because Plaintiff suffered a legal injury as a result of Defendant's violations of the TCPA, and because she is not requesting an advisory opinion from this Court. Thus, Plaintiff has sufficient stake in a justiciable controversy and seeks to obtain judicial resolution of that controversy.

## STATUTORY BACKGROUND

16. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

17. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy

rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

18. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

19. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

20. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

21. In addition to the National do-not-call protections, the TCPA prohibits any person from making calls or sending text messages to a cellular telephone number using an automatic telephone dialing system ("ATDS" or "autodialer") without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). The term "call" includes text messages. FCC regulations and judicial interpretations have clarified that technologies that send mass text messages without human intervention or that dial from a stored list may qualify as autodialers, even if they do not randomly or sequentially generate numbers. See In re Rules and Regulations

Implementing the Telephone Consumer Protection Act of 1991; *Facebook, Inc. v. Duguid*, 592 U.S. 395, 403 (2021).

22. The FCC has further defined the standard of consent for autodialed marketing messages. "Prior express written consent" is required before a caller can lawfully place telemarketing calls or send text messages using an autodialer to a consumer's wireless number. Such consent must be in writing, must bear the signature of the person called, and must clearly authorize the seller to deliver advertisements or telemarketing messages using an autodialer or prerecorded voice. 47 C.F.R. § 64.1200(f)(9). The agreement must also include a clear and conspicuous disclosure informing the consumer that consent is not a condition of purchasing any goods or services.

23. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub. L. No. 102-243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only

> effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, No. 11-C-5886, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

24. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...." *Id.* at §§ 12-13. *See also Mims*, 132 S. Ct. at 744.

25. The Federal Communication Commission ("FCC") has made rulings regarding the TCPA's vicarious liability standards as it relates to telemarketing. As early as 1995, the FCC stated that "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself paced the call." See *In re Rules and Regulations Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 ("The 1995 Ruling.")

## FACTUAL ALLEGATIONS

26. Defendant owns and operates Paramount, a limited liability company engaged in the business of real estate investment, development, and property management, with its principal place of business in Newark, New Jersey.

### *NATIONAL DO NOT CALL REGISTRY VIOLATIONS*

27. Plaintiff's telephone number ending in –4159 has been registered on the National Do Not Call registry since before the conduct alleged herein.

28. Despite this registration, Defendant sent at least three unsolicited telemarketing text messages to Plaintiff's number between July and September 2025.

29. These communications were part of Defendant's standardized and recurring telemarking campaign.

30. Upon information and belief, Defendant contacted numerous consumers whose numbers were listed on the National Do Not Call Registry in a similar manner.

31. Defendant's failure to consult or adhere to the National Do Not Call Registry before initiating text message solicitations violates 47 C.F.R. § 64.1200(c)(2).

***AUTODIALED NO CONSENT VIOLATIONS***

32. On or about May 19, 2018, Plaintiff registered her cellular telephone number ending in 4159 with the National Do Not Call Registry.

33. Beginning in or around July 2025, Plaintiff received telemarketing text messages sent to her registered phone number from Defendant, despite having no prior relationship with Defendant and providing no consent to receive such communications.

34. On August 6, 2025, Plaintiff received another telemarketing text message from Paramount, offering apartment leasing opportunities in East Orange, New Jersey, and prompting the recipient to reply "YES" to indicate interest.

35. Despite not replying "YES," on September 9, 2025, Plaintiff received another telemarketing text message from Paramount, again offering apartment leasing opportunities in East Orange, New Jersey, and prompting the recipient to reply "YES" to indicate interest.

36. Plaintiff did not enter into any agreement to be contacted or marketed to using automated text messaging with Paramount.

37. Plaintiff received the subject text messages from within this judicial District and, therefore, Defendant's violation of the TCPA occurred within this District.

38. The purpose of Defendant's text messages was to promote and solicit the services offered by Defendant.

39. Defendant's texts and calls were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

40. Upon information and belief, at no point in time did Plaintiff provide Defendant with her express consent to be contacted.

41. Upon information and belief, Defendant caused similar text messages to be sent to other individuals residing within this judicial District.

42. Automated telemarketing text messages, such as the ones made by Defendant, are subject to the TCPA. See Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

43. Under FCC guidance and well-settled case law, text messages constitute "calls" within the meaning of the TCPA. See *Gager v. Dell Fin. Services, LLC*, 727 F.3d 265, 269 (3d Cir. 2013); *Satterfield v. Simon & Schuster, Inc.,* 569. F.3d 946, 952 (9th Cir. 2009).

44. The text messages originated from telephone numbers which upon information and belief are owned and operated by Defendant or on behalf of Defendant.

45. Plaintiff and the Class members have suffered concrete harm because of Defendant's unwanted and unsolicited text messages, including, but not limited to:

- Device storage;
- Data usage;
- Lost time tending to and responding to the unsolicited text messages;
- Invasion of Privacy;
- Intrusion upon Seclusion;

- Nuisance,
- Aggravation; and
- Annoyance.

46. Defendant's text messages also inconvenienced Plaintiff and caused disruption to her daily life.

47. These forms of injury are sufficient for Article III standing purposes.

48. Defendant is liable for the text messages sent by or through a third-party platform, because Defendant initiated or caused them to be initiated, and because the messages were sent for Defendant's benefit and at Defendant's direction. See *In re DISH Network, LLC,* 28 FCC Rcd. 6574, 6582 (2013) (a seller may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party marketers).

49. Defendant directly initiated the unlawful text messages to Plaintiff and the other Class members and is directly liable for violating the TCPA.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

50. Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of all other similarly situated persons as a class action. The "Classes" that Plaintiff seeks to represent are comprised of and defined as:

> **<u>National Do Not Call Registry Class</u>: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent more than one telemarketing text message within a 12-month period by or on behalf of Defendant, to a residential or cellular telephone number that was registered on the National Do Not Call Registry for at least thirty-one (31) days prior to the first message.**
>
> **<u>Autodialed No Consent Class:</u> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent one or more text messages from Defendant or anyone on Defendant's behalf using an automatic telephone dialing system, without prior express written consent.**

51. Defendant and its employees or agents are excluded from the Class. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

52. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

**<u>NUMEROSITY</u>**

53. Upon information and belief, Defendant has placed violative calls to cellular telephone numbers belonging to thousands of consumers throughout the United States after they were registered on the DNC. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

54. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery and a review of Defendant's records. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMONALITY**

55. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Among the questions of law and fact common to the Class are:

i. Whether Defendant violated 47 C.F.R. § 64.1200(c);

ii. Whether Defendant violated 47 C.F.R. § 64.1200(f)(9);

iii. Whether Defendant's conduct was knowing and willful;

iv. Whether Defendant violated the privacy rights of Plaintiff and members of the class;

v. Whether Defendant is liable for damages, and the amount of such damages; and

vi. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

56. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to

telephone numbers assigned to cellular telephone services after the consumer has opted out of further communication is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

57. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

**ADEQUACY**

58. Plaintiff is a representative who will fully and adequately asserts and protects the interests of the Class and has retained competent counsel experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**SUPERIORITY**

59. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the thousands or millions

of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

60. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

61. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**COUNT I**

**Violations of the TCPA, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**

*Individually and on Behalf of the National Do Not Call Registry Class*

62. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

63. Pursuant to 47 U.S.C. §227(c), the Federal Communications Commission ("FCC") was directed to issue regulations to protect residential and wireless telephone subscribers' privacy rights to avoid receiving unwanted telephone solicitations.

64. Under 47 C.F.R. § 64.1002(c)(2), a person or entity must not initiate any telephone solicitation to a residential or wireless telephone subscriber who has registered their number on the National Do Not Call Registry for at least thirty (30) days.

65. Plaintiff's telephone number was listed on the National Do Not Call Registry well prior to any of Defendant's telemarketing calls and text messages alleged herein.

66. Despite this registration, Defendant sent more than one telemarketing text message to Plaintiff's number within a 12-month period.

67. These messages were not sent in error, nor were they isolated events. Rather, they were part of a repetitive and ongoing telemarketing campaign conducted by or on behalf of Defendant.

68. Defendant failed to consult the National Do Not Call Registry prior to initiating these solicitations, and failed to implement any reasonable procedures to ensure compliance with the TCPA's national DNC requirements.

69. Defendant's conduct violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) because Plaintiff and other members of the National Do Not Call Registry Class received more than one telephone solicitation within a 12-month period, despite their numbers being listed on the Registry for at least thirty days.

70. As a result of Defendant's conduct, Plaintiff and the National Do Not Call Registry Class suffered invasions of privacy and are entitled to an award of statutory damages.

71. For each unlawful telemarketing text message sent to Plaintiff and members of the National Do Not Call Registry Class in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2), Plaintiff and Class members are entitled to recover their actual monetary loss or up to $500 in statutory damages per violation, whichever is greater.

72. If the Court finds that Defendant's violations were knowing or willful, Plaintiff and Class members are entitled to treble damages of up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(5).

73. Plaintiff and the Class are also entitled to seek injunctive relief prohibiting Defendant from making further calls and sending text messages to numbers registered on the National Do Not Call Registry, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT II**

**<u>Violations of the TCPA, 47 U.S.C. § 227(b) and 47 C.F.R. 64.1200(f)(9)</u>**

*Individually and on Behalf of the Autodialed No Consent Class*

74. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

75. Defendant and/or its agent sent multiple text messages to Plaintiff's and Class members' cellular telephone numbers using an automatic telephone dialing system ("autodialer") as defined by the TCPA, 47 U.S.C. § 227(a)(1), or using a dialing system that automatically transmitted messages from a stored list without human intervention, which courts have held may qualify as an ATDS post-*Facebook v. Duguid*, depending on the system's functionality.

76. Plaintiff and Class Members never provided Defendant with express written consent as required by 47 C.F.R. § 64.1200(f)(9).

77. Defendant's autodialed messages were telemarketing in nature and were sent for the purpose of promoting its real estate services.

78. Defendant's use of autodialing technology to contact consumers without prior express written consent constitutes a clear violation of 47 U.S.C. § 227(b)(1)(A)(iii).

79. As a result of Defendant's violations, Plaintiff and Class members are entitled to an award of $500 in statutory damages per violation pursuant to 47 U.S.C. § 227(b)(3)(B).

80. If the Court finds Defendant's conduct was willful or knowing, Plaintiff and the Class are entitled to an award of up to $1,500 per violation pursuant to 47 U.S.C. § 227(b)(3).

81. Plaintiff and Class members seek injunctive relief prohibiting Defendant from using autodialers or similar equipment to send unsolicited text messages without prior express written consent in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class, prays for the following relief:

i. An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Marcus & Zelman, LLC as Class Counsel;

ii. An award of statutory damages for each and every negligent violation to each member of the Autodialed No Consent Class pursuant to 47 U.S.C. § 227(b)(3)(B);

iii. An award of treble statutory damages for each and every knowing and/or willful violation to each member of the Autodialed No Consent Class pursuant to 47 U.S.C. § 227(b)(3)(B);

iv. An award of statutory damages for each and every negligent violation to each member of the National Do Not Call Registry Class pursuant to 47 U.S.C. § 227(c)(5);

v. An award of treble statutory damages for each and every knowing and/or willful violation to each member of the National Do Not Call Registry Class pursuant to 47 U.S.C. § 227(c)(5);

vi. An order declaring that Defendant's actions, set out above, violate the TCPA;

vii. An injunction requiring Defendant to cease all unsolicited text messaging and calling activity, and to otherwise protect the interests of the Class;

viii. Pre-judgment and post-judgment interest on monetary relief; and

ix. Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemizations associated with the allegations herein, including all records, lists, electronic databases or other itemizations in the

possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged communications.

Dated: October 1, 2025

/s/ Ari Marcus
Ari Marcus, Esq.
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Ashbury Park, NJ 07712
Tel: (732) 695-3282
Fax: (732) 298-6256
Email: ari@marcuszelman.com
Attorneys for Plaintiff